# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| DECARLA RAIETTA HEARD, as Personal Representative of the Estate of Jamea Jonae Harris, <br><br> Plaintiff, <br><br> v. <br><br> DARIUS MILES, *et al.*, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) <br><br> 7:23-cv-01424-LSC |

## MEMORANDUM OF OPINION

### I. INTRODUCTION

Plaintiff Decarla Raeitta Heard, as the Personal Representative of the Estate of Jamea Jonae Harris, brings this action alleging negligence, wantonness, and wrongful death in connection with a shooting that occurred in Tuscaloosa, Alabama, on January 15, 2023. Before the Court is Defendant Brandon Miller's motion to dismiss. (Doc. 8.) The motion is fully briefed and ripe for review. Upon due consideration and for the reasons stated herein, the motion to dismiss is due to be **DENIED**.

### II. BACKGROUND[1]

---

[1] In evaluating a motion to dismiss, this Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Lanfear v. Home Depot, Inc.*,

Around midnight on January 14, 2023, Miller went to the popular student gathering area called "The Strip" in downtown Tuscaloosa with Darius Miles, Michael Davis, and Jaden Bradley. (Doc. 1 ¶ 7.) Miles brought a firearm that night, but he left it in Miller's vehicle. (*Id.*) Miles, Davis, and Bradley entered a sports bar, but Miller did not join them. (*Id.*) They stayed at the bar for about an hour and a half before leaving. (*Id.* ¶ 9.)

Harris was also downtown that night with her boyfriend, Cedric Johnson, and her cousin. (*Id.* ¶ 8.) The three were sitting in Harris's Jeep waiting for food when Miles, Davis, and Bradley walked by after leaving the sports bar. (*Id.* ¶¶ 8, 9.) Davis allegedly stopped by the Jeep to dance. (*Id.* ¶ 9.) Johnson rolled down his window and purportedly had an "elevated" exchange with Davis and Miles before telling them to leave. (*Id.*) Miles and Davis backed away and continued walking down the street. (*Id.* ¶ 10.) One minute later, Miles texted Miller asking for his "joint," referring to his firearm, because someone was "fakin'," which Plaintiff defines as "using words in an aggressive manner with no intention or ability to back them up." (*Id.* ¶ 10.)

---

679 F.3d 1267, 1275 (11th Cir. 2012) (quoting *Ironworkers Loc. Union 68 v. AstraZeneca Pharm., LP*, 634 F.3d 1352, 1359 (11th Cir. 2011)). The following facts are, therefore, taken from the allegations contained in Plaintiff's Complaint, and the Court makes no ruling on their veracity.

Miller arrived a few minutes later. (*Id.* ¶ 11.) While Miller sat in his vehicle, Miles told Davis that his firearm was on the back seat and had "a round in the chamber." (*Id.*) Miles retrieved the firearm and handed it to Davis. (*Id.*) According to Plaintiff, Davis then approached the driver's side of Harris's Jeep, where he began firing shots. Johnson returned fire. (*Id.* ¶ 12.) Harris was struck by one of the rounds fired from Miles's firearm and was pronounced dead on the scene. (*Id.* ¶ 13.)

On behalf of Harris, Plaintiff filed this wrongful death action against Miles, Davis, and Miller. (*Id.* ¶¶ 1–4). As relevant to this Opinion, Plaintiff alleges that Miller negligently or wantonly caused Harris's death by "bringing a dangerous weapon to a dispute." (*Id.* ¶¶ 18, 20.)

### III.  STANDARD OF REVIEW

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint "must plead enough facts to state a claim to relief that is plausible on its face." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347–48 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Stated another way, the factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). A complaint that "succeeds in identifying facts that are suggestive enough to render [the necessary elements of a claim] plausible" will survive a motion to dismiss. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* If the pleading "contain[s] enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory,'" it satisfies the notice pleading standard. *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683–84 (11th Cir. 2001)).

IV. DISCUSSION

Plaintiff's complaint asserts one combined cause of action for negligence, wantonness, and wrongful death. (Doc. 1 ¶¶ 15–20). Miller argues that Plaintiff has failed to state a plausible claim for negligence or wantonness. Specifically, he argues that Plaintiff fails to plausibly allege a viable legal duty or proximate causation. This Court disagrees.

To state a claim for negligence, a plaintiff must allege (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury. *Hilyer v. Fortier*, 227 So. 3d 13, 22 (Ala. 2017) (citing *Lemley v. Wilson*, 178 So. 3d 834, 841–42 (Ala. 2015)). The same conduct establishing negligence may support a claim for wantonness if the "wrongful" acts or omissions were allegedly committed "with reckless indifference to the consequences." *See id.*

Plaintiff plausibly alleges each element of her negligence and wantonness claims. She alleges (1) Miller "owed [Harris] a duty of care to avoid causing her harm," and (2) he allegedly breached that duty by "bringing a dangerous weapon to a dispute," thereby (3) "proximately caus[ing]" (4) Harris to "suffer serious injuries" and death. (Doc. 1 ¶¶ 17–20.) She further claims that "Miller knew or should have known that bringing a dangerous weapon to a dispute ... would likely result in harm to those around [him]," and that he acted "recklessly" in doing so.

(*Id.* ¶ 18.) These allegations plainly satisfy Plaintiff's pleading burden. *See Hilyer*, 227 So. 3d at 22.

Miller contends that the claims against him should be dismissed because he "had no legal duty to prevent Harris's death at the hands of Davis." (Doc. 8 at 6.) It is generally true in Alabama that "a person has no duty to protect another from criminal acts of a third person." *Carroll v. Shoney's, Inc.*, 775 So. 2d 753, 756 (Ala. 2000) (citing *Ex parte McRae's of Alabama, Inc.*, 703 So. 2d 351 (Ala. 1997)). But that rule does not apply here. Plaintiff does not argue that Miller had a duty to *prevent* Harris's death. Rather, she asserts he had a duty not to *cause* Harris's death by bringing a firearm to a dispute, knowing that harm would likely result. *See Bobo v. Tennessee Valley Auth.*, 855 F.3d 1294, 1305 (11th Cir. 2017) (recognizing that Alabama law is more likely to impose a duty where the defendant "affirmatively acts in a way that involves the defendant directly in the foreseeable consequences" of his actions (cleaned up) (quoting *Taylor v. Smith*, 892 So. 2d 887, 897 (Ala. 2004)).

"In Alabama, the existence of a duty is a strictly legal question to be determined by the court." *Taylor*, 892 So. 2d at 891. The "key factor" in determining the existence of a duty "is whether the injury was foreseeable by the defendant." *Id.* at 892 (emphasis and citations omitted). "In a variety of circumstances," the Alabama Supreme Court has "recognized a duty to foreseeable

third parties" based on the "well-established rule that 'every person owes every other person a duty imposed by law to be careful not to hurt him.'" *Id.* at 893 (citing examples). It is this well-established duty of care that Plaintiff claims Miller owed to Harris. *Cf. id.* at 892 (concluding that a physician owed a duty of care to a third-party motorist who was hit by a patient where it was "reasonably foreseeable" that the patient would drive under the influence of drugs and cause such an accident).

Recognizing the importance of foreseeability on the question of a legal duty, Miller next argues that the occurrence of a deadly shootout was not foreseeable. It is at this point that Miller's argument regarding duty collapses into his argument on proximate cause. *See Moye v. A.G. Gaston Motels, Inc.*, 499 So. 2d 1368, 1370 (Ala. 1986) ("[W]hether the case is decided on lack of initial legal duty or on the basis that the criminal act was an independent intervening cause which prevented any action or inaction on the part of the [defendant] from being the proximate cause of [the] plaintiff's injury, the key to either is foreseeability."). Proximate causation requires the injury to be a "natural and probable consequence of the negligent act or omission" such that an ordinarily prudent person ought to have foreseen the resulting injury. *Vines v. Plantation Motor Lodge*, 336 So. 2d 1338, 1339 (Ala. 1976).

"For an injury to be foreseeable, it is not necessary to anticipate the specific harm that occurred, but only that some general harm or consequence would follow."

*Bobo*, 855 F.3d at 1305 (cleaned up) (quoting *Smith v. AmSouth Bank, Inc.*, 892 So. 2d 905, 910 (Ala. 2004)). "Ordinarily, it is a jury question whether consequences of an act are reasonably foreseeable…." *Alabama Power Co. v. Moore*, 899 So. 2d 975, 979 (Ala. 2004). Foreseeability becomes a question of law for the court only where "there can be no reasonable difference of opinion as to the conclusion to be reached." *Id.* The allegations in this case provide enough room for a "reasonable difference of opinion" as to the foreseeability of Harris's injury following Miller's conduct. *See id.*

Plaintiff plausibly alleges that, by delivering Miles's firearm to the scene of a dispute, Miller affirmatively acted in a way that involved him directly in the foreseeable consequences of Davis's actions. *See Bobo*, 855 F.3d at 1305. Miller knew that Miles, Davis, and Bradley went into a sports bar. (Doc. 1 ¶ 7.) About an hour and a half later, Miller received a text message from Miles asking for his firearm because someone was "fakin'," or acting aggressively. (*Id.* ¶ 10.) Miller responded by bringing Miles's firearm to the scene of the dispute. (*Id.* ¶ 11.) Accepting these alleged facts as true and drawing "all reasonable inferences in the plaintiff's favor," *Smith v. United States*, 873 F.3d 1348, 1351 (11th Cir. 2017), a reasonable juror could conclude it was foreseeable that someone might use the firearm to hurt someone else. *Accord Williams v. Bumpass*, 568 So. 2d 979, 981 (Fla. Dist. Ct. App. 1990) (affirming

liability against a defendant that delivered a firearm to her friend who was engaged in a physical dispute because "it was clearly foreseeable" that the friend would shoot the plaintiff).

Finally, Miller advances a bailment theory of liability preclusion. He argues that he cannot be liable for returning Miles's firearm because he "had no legal right to withhold Miles's property from him," and doing so could subject him to liability for breach of contract or conversion. (Doc. 22 at 9.) But Miller raises this argument for the first time in his reply brief, leaving Plaintiff no chance to respond.[2] As such, the argument has not been properly raised and will not be considered. *United States v. Coy*, 19 F.3d 629, 632 n.7 (11th Cir. 1994) ("Arguments raised for the first time in a reply brief are not properly before a reviewing court."); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 683 (11th Cir. 2014) (collecting cases). If Miller wishes to assert and develop this argument, he can do so after discovery in a properly filed motion for summary judgment.

V. **CONCLUSION**

---

[2]   To justify this, Miller asserts that Plaintiff raised a new theory of negligent entrustment in her response. The Court rejects this proffered justification; Plaintiff's response merely restated the complaint's allegations. (*Compare* doc. 19 at 9–10 ("Miller clearly owed a duty to avoid acting unreasonably in delivering a loaded weapon to an intoxicated person he knew to be engaged in an escalating altercation.") *with* doc. 1 ¶ 18 ("Miller knew or should have known that bringing a dangerous weapon to a dispute … would likely result in harm to those around [him].").)

For the reasons stated above, Miller's motion to dismiss (doc. 8) is due to be **DENIED**. The Court will enter an order consistent with this Memorandum of Opinion.

**DONE** AND **ORDERED** ON APRIL 24, 2024.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

215647